Argued and submitted November 24, 2009, affirmed July 28, 2010

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## DEJA MARIE GOMES,
*Defendant-Appellant.*

Douglas County Circuit Court
07CR0734FE; A138135

236 P3d 841

Ryan T. O'Connor, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

## SCHUMAN, J.

Defendant appeals her conviction for possession of a controlled substance, assigning error to the trial court's denial of her motion to suppress evidence obtained after she consented to a search of her purse during a lawful traffic stop. She argues that the arresting officer obtained her consent by exploiting information that he acquired by making inquiries that were unrelated to the traffic stop and that unnecessarily extended its duration. The state responds that the officer's inquiries that ultimately led to the discovery of the disputed evidence occurred during the lawful traffic stop and did not unnecessarily extend its duration. We affirm.

The following facts are not in dispute on appeal. Oregon State Police Trooper Bennett pulled defendant over for speeding and not signaling during a lane change. At first, Bennett believed that defendant was the only person in the car. However, when the car pulled to the side of the road, Bennett saw a second person sit up from a reclining position in the back seat. That person, Trahan, was not wearing his seatbelt.

As Bennett approached the driver side window, he noticed a butane cigarette lighter, which he characterized as a "torch," on the floorboard of the rear passenger-side seat. Bennett testified that, "in [his] training and experience, [a butane lighter is] used to smoke either cocaine or methamphetamine."

Bennett approached defendant, explained why he had pulled her over, asked to see her license and registration, and informed Trahan—the car's owner—that he would need to provide his identification as well. While Trahan was retrieving the documents from the car's center console, Bennett saw that the console contained an opened cigarette pack. He could see that it was a hard pack with a hinged top and that it did not contain any cigarettes. Bennett testified that "it's been [his] training and experience [that] * * * a discarded cigarette case [is] used to contain either methamphetamine, or cocaine, or marijuana[.]" At that point, Bennett developed a suspicion that there were illegal drugs in the car. He asked Trahan if he could see the cigarette pack. Before

handing the pack to Bennett, Trahan began dumping its contents, and Bennett saw a pill fall out. Without prompting, Trahan explained that the pill was Cialis that a friend had given him. Bennett knew that Cialis was a prescription drug and that Trahan was therefore in violation of ORS 689.765(6): "No person shall sell, give away, barter, dispense, distribute, buy, receive or possess any prescription drug except as authorized by law." He asked for consent to search the car, which Trahan, at that point, denied. Bennett then explained to both Trahan and defendant that he was concerned about the Cialis in the car and that he would "proceed with things a little differently"—including impounding the car until he could get a warrant—since Trahan would not consent to a search. After this explanation, Trahan consented.

When Trahan gave his consent to search the vehicle, defendant "reach[ed] over and start[ed] taking her purse off the seat and [had] it in her lap and start[ed] shielding her purse away from [Bennett]." Bennett asked her not to do that and requested permission to search her purse. She declined. Bennett then asked her to zip the purse closed and place it on the empty passenger seat so she could not have access to it. The officer asked if defendant had weapons in her purse, and she responded that she did not.

After Trahan had granted consent to search the car, defendant asked Bennett, "Don't you need a warrant?" Bennett explained that he did not need a warrant if Trahan consented to the search. Bennett testified,

> "I explained very, I think, concisely as to what would occur and what [Trahan's] options were, and tried to confirm that he knew he didn't have to give consent. That he knew that if he did give consent, I was going to search his vehicle. If he didn't give consent, that I intended to apply for a search warrant, and if I was granted a search warrant, then I would proceed with it in that manner. And at the very end of that explanation, I reconfirmed if I could search his vehicle, and * * * [he said] 'yes.'"

Trahan and defendant then both stepped out of the car and were patted down. Trahan and defendant waited with a

backup officer, who had arrived earlier, while Bennett conducted the search. Inside the car, he found a bottle cap with a piece of cotton and fresh liquid in it. Bennett testified that cotton is used in this manner as a filter through which to siphon controlled substances so granules are not inadvertently "sucked" into the syringe and injected into the user's vein.

After Bennett discovered the bottle cap, he read Trahan and defendant their *Miranda* rights and handcuffed them. Bennett asked defendant if she had injection marks on her arm, and she admitted that she did. He then asked her a series of questions, one of which elicited the admission that there were drugs in her purse. Bennett asked for permission to search her purse, and she consented. In the purse, he found cocaine, the disputed evidence.

Defendant was charged with possession of a controlled substance. Before trial, she argued that the cocaine and the statements she made about it should be suppressed because the officer did not have reasonable suspicion of drug activity at the time he began questioning Trahan. That questioning, according to defendant, violated Article I, section 9, of the Oregon Constitution[1] and led ultimately to Trahan's consent to search the car; that consent, in turn, led to the discovery of the drug-infused cotton ball, which led to the questioning of defendant, her consent to search her purse, and the discovery of the drugs.

The trial court denied defendant's motion. According to the court, Bennett had reasonable suspicion of criminal activity based on his observations of the butane lighter, empty cigarette pack, and his "training and experience"; therefore, the court reasoned, asking for consent to search the cigarette pack was lawful. Additionally, the court concluded that defendant's consent to have her purse searched was voluntary. Defendant was then tried to the court on stipulated facts, reserving the right to appeal, and was convicted. This appeal ensued.

---

[1] Article I, section 9, of the Oregon Constitution provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

On appeal, defendant argues that Bennett did not have reasonable suspicion of criminal activity when he questioned Trahan about the cigarette pack; the questioning was therefore illegal, she asserts, because it was unrelated to the traffic stop and unnecessarily extended its duration. *State v. Rodgers*, 219 Or App 366, 371, 182 P3d 209 (2008), *aff'd*, 347 Or 610, 227 P3d 695 (2010).[2] Further, defendant maintains that Bennett would not have found the drugs in defendant's purse but for the unlawful questioning of Trahan, and the causal connection between that allegedly unlawful questioning of Trahan and the discovery of the cocaine was not broken by Bennett's administering *Miranda* warnings or repeatedly telling Trahan that he did not have to consent to any search. *State v. Hall*, 339 Or 7, 34-35, 115 P3d 908 (2005).[3]

■     The state concedes on appeal that the trial court's primary rationale was erroneous; Bennett's suspicion of criminal activity when he began to question Trahan, based solely on having learned from his "training and experience" that the presence of a butane cigar or cigarette lighter and an empty cigarette hard pack are "consistent with" drug use, was not a *reasonable* suspicion without additional suspicious facts. We accept the concession. *See State v. Daniels*, 234 Or App 533, 542, 228 P3d 695 (2010) ("The extent to which an officer must explain the basis of his or her 'training and experience' knowledge * * * varies from case to case across a broad spectrum."). Many people—including, as he noted, the trial judge—own a butane "torch" lighter, and the existence of such an instrument in proximity to an empty cigarette package may indeed be consistent with illegal drug use, but common sense tells us that it is also consistent to a far greater degree with use of a legal drug: tobacco.

---

[2] Defendant does not make any of the following arguments on appeal: that the original request for Trahan's identification was unlawful, that recognizing the Cialis did not create reasonable suspicion, that Trahan's consent to search the car was involuntary, that the saturated cotton ball and bottle cap did not create reasonable suspicion, or that defendant's consent was involuntary.

[3] On appeal, defendant also argues that the trial court's ruling violates her rights under the Fourth Amendment to the United States Constitution. However, defendant did not develop the federal constitutional argument at trial, and, therefore, we decline to address it on appeal. *See State v. Moore*, 324 Or 396, 419, 927 P2d 1073 (1996) (refusing to address the defendant's due process claim not raised at trial).

■　　　However, the state argues in the alternative that (1) defendant's argument depends on her assertion that Trahan's rights were violated, and she cannot obtain suppression on that basis; (2) Bennett's request for permission to see the empty cigarette pack occurred while he was simultaneously attending to another stop-related task—that is, obtaining identification and proof of insurance—and, in any event, (3) defendant's consent to search her purse was sufficiently attenuated from any illegality with respect to Trahan so as to break the chain of causation. We review for errors of law, deferring to the trial court's factual findings where there is sufficient evidence in the record to support them, *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993), and, under that standard, we agree with the state.[4]

■　　　We need not decide whether defendant can challenge Bennett's questioning of Trahan because, even assuming that she can, Bennett's conduct did not violate Article I, section 9. Determining the legality of a traffic stop is a fact-specific inquiry. *State v. Hendon*, 222 Or App 97, 103, 194 P3d 149 (2008). In *Rodgers*, 219 Or App at 371, we explained that questioning that is unrelated to the initial basis for a traffic stop is unlawful in two types of factual situations. In the first, an officer concludes a lawful stop and then initiates a second stop by questioning the person about unrelated matters without reasonable suspicion. *Id.* In the second, an officer, without letting the person know expressly or by implication that he or she is free to go, detains the person beyond the time reasonably required to investigate the initial basis for the stop and issue a citation. *Id.* at 371-72. We summarized,

> "[A]lthough an officer is free to question a motorist about matters unrelated to the traffic infraction during an unavoidable lull in the investigation, such as while awaiting the results of a records check, that officer is not similarly free to question the motorist about unrelated matters

---

[4] We decide this case on a different basis than the trial court's. We may do so, however, when the court makes a correct ruling admitting evidence but articulates an erroneous reason for it. *State v. Nielsen*, 316 Or 611, 629, 853 P2d 256 (1993); *see also Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (trial court can be "right for the wrong reason" if the record is sufficient to support the alternative basis for the ruling, the ruling is consistent with the evidence, and the record would not have developed differently had the prevailing party raised the alternative basis for affirmance below).

as an alternative to going forward with the next step in processing the infraction, such as the writing or issuing of a citation. When an officer has all of the information necessary to issue a citation but instead delays in processing it or in telling the motorist that he or she is free to go, the stop is no longer lawful unless the officer has reasonable suspicion of further criminal activity."

*Id.* at 372.

■        In affirming our decision in *Rodgers*, the Supreme Court agreed that

"[p]olice authority to detain a motorist dissipates when the investigation reasonably related to that traffic infraction, the identification of persons, and the issuance of a citation (if any) is completed or reasonably should be completed. * * * Because police inquiries during a traffic stop are neither searches nor seizures, [such] police inquiries in and of themselves require no justification and do not necessarily implicate Article I, section 9"

unless "combined with physical restraint or a police show of authority," in which case they "may result in a restriction of personal freedom that violates Article I, section 9." *Rodgers*, 347 Or at 623-24. We take that language to confirm our *Rodgers* opinion and our opinion in *State v. Amaya*, 176 Or App 35, 29 P3d 1177 (2001), *aff'd on other grounds*, 336 Or 616, 89 P3d 1163 (2004), that there are no Article I, section 9, implications if an inquiry unrelated to the traffic stop occurs during a routine stop but does not delay it.

■        We therefore conclude that, under the Supreme Court's *Rodgers* opinion, we have correctly concluded in a number of cases that a police officer unnecessarily and unlawfully extends the duration of a traffic stop when the officer begins a line of questioning unrelated to the traffic stop after having obtained, or instead of obtaining, the information necessary to proceed with citing the defendant. In *State v. Klein*, 234 Or App 523, 228 P3d 701 (2010), for example, we held that an officer unnecessarily delayed in processing a traffic citation and, at the same time, an investigation based on observation of what the officer suspected were burglary tools, when (without reasonable suspicion) the officer began an extended inquiry about drugs. *See also State v.*

*Huggett*, 228 Or App 569, 209 P3d 385 (2009), *rev dismissed*, 348 Or 71 (2010); *State v. Kirkeby*, 220 Or App 177, 185 P3d 510 (2008), *aff'd*, 347 Or 610, 227 P3d 695 (2010).

That is not what occurred in this case. Here, Bennett began the inquiries about the cigarette package while defendant and Trahan were in the process of obtaining and turning over the licenses, registration, and proof of insurance. The initiation of questioning and the processing of the stop occurred more or less simultaneously. Although the *results* of the questioning led to a police-citizen encounter that was longer than it would have been without the questioning, that fact is not relevant. The relevant fact is that the inquiry that transformed the encounter from a routine traffic stop into a more extended criminal investigation occurred *during* the time that Bennett was lawfully and expeditiously conducting the traffic stop and, unlike the inquiries in *Klein*, did not result in any extension of that stop. Under controlling case law, then, the questioning of Trahan was not unlawful. That conclusion, in turn, means that, by using that information to obtain consent to search the car, Bennett was not exploiting an illegality. The discovery of the cotton ball was therefore lawful; that discovery gave Bennett reasonable suspicion to believe that defendant possessed drugs and, therefore, his questioning of her and his request to search her purse were also lawful.

Affirmed.