Argued and submitted February 21, reversed and remanded August 14, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TOMMY LEE HUFFMAN,
*Defendant-Appellant.*

Lane County Circuit Court
231100298; A148653

308 P3d 288

Ingrid A. MacFarlane, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. With him on brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and De Muniz, Senior Judge.

DE MUNIZ, S. J.

## DE MUNIZ, S. J.

Defendant appeals from a judgment of conviction for unlawful possession of methamphetamine. ORS 475.894. The only issue on appeal is whether the officer who stopped defendant had reasonable suspicion that defendant was engaged in criminal activity. We hold that the officer lacked the reasonable suspicion necessary to justify the stop. Because the evidence supporting defendant's conviction was derived directly from the illegal seizure of defendant, we reverse the judgment of conviction and remand to the circuit court for further proceedings.

The facts are undisputed. On December 31, 2010, at about 4:00 a.m., Eugene Police Officer Meador saw defendant riding a bicycle out of the driveway of the Eugene City Shops. The Eugene City Shops is a locked facility in which city-owned vehicles are stored and maintained. The facility is closed at night. Meador stopped defendant because he was concerned that defendant may have been attempting to enter the facility. Defendant explained to Meador that he had been riding his bike on the sidewalk and, because of a dip in the sidewalk, had ridden for a short distance on the Eugene City Shops's driveway.

Defendant appeared to be "extraordinarily nervous," was "visibly shaking," and had an "audible tremor" in his voice. Defendant's apparent anxiety increased Meador's concern that defendant was involved in criminal activity within the facility. Defendant was wearing heavy clothing and was carrying a backpack. Meador asked defendant if he was armed, and defendant replied that he was not. Meador then asked if he could pat defendant down, and defendant agreed to let Meador do so. Meador conducted the pat down and next asked defendant if there was anything illegal or dangerous in his backpack. Defendant stated that there was not. Meador asked if he could check, and defendant handed the backpack to Meador. Meador searched a pocket on the side of the backpack and found a suspected methamphetamine pipe. Meador asked defendant whether there was anything else in the backpack that he should be concerned about, and defendant said that there was a "20-sack of dope" (methamphetamine valued at $20) in the backpack. Meador asked if he could retrieve that item, and defendant said that he could. Meador retrieved the "sack," and its contents were later determined to be methamphetamine.

This court reviews a trial court's order denying a defendant's motion to suppress evidence for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We begin with what is not at issue in this case. In that regard, the state agrees that Meador "stopped" defendant for purposes of Article I, section 9, of the Oregon Constitution.[1] Consequently, as noted, the only issue on appeal is whether that stop was justified because Meador had reasonable suspicion that defendant was engaged in criminal activity.

An officer has reasonable suspicion when the officer subjectively believes that the person has committed a crime and that belief is objectively reasonable in light of the totality of the circumstances. *State v. Belt*, 325 Or 6, 11, 932 P2d 1177 (1997). "Reasonable suspicion must be evaluated based on the information that is available to the officer under the circumstances in which the decision must be made." *State v. Juarez-Godinez*, 326 Or 1, 23, 942 P2d 772 (1997) (citations omitted).

Here, as noted, Meador stopped defendant because he saw him riding his bike on a driveway that led to the Eugene City Shops, a locked facility in which city-owned vehicles were stored and maintained. Meador was concerned that defendant may have attempted to enter that facility.

"Reasonable suspicion 'does not require that the facts as observed by the officer conclusively indicate illegal activity but, rather, only that those facts support the reasonable inference of illegal activity by that person.'" *State v. Dampier*, 244 Or App 547, 551, 260 P3d 730 (2011) (quoting *State v. Hiner*, 240 Or App 175, 181, 246 P3d 35 (2010)). As the state views it, Meador's suspicion that defendant was engaged in criminal activity was reasonable given Meador's personal knowledge that the facility was closed to the public, and secured and locked at 4:00 a.m. We disagree.

In *State v. Messer*, 71 Or App 506, 508, 692 P2d 713 (1984), a police officer observed the defendant and another

---

[1] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

person sitting in a truck that was parked in a dimly lit area of a mall parking lot at a time when the mall was closed. Concluding that the officer lacked reasonable suspicion to support the defendant's detention, this court stated that it was "not prepared to say that all persons who sit in vehicles in parking lots at odd hours of the night or morning thereby render themselves suspect and subject to being stopped by a passing police officer." *Id.* at 509. Like in *Messer*, all that Meador observed was defendant's presence in the area of a business or facility at a time when the business was closed. Meador did not see defendant do anything suspicious, did not see defendant carrying anything suspicious, and did not see any signs of criminal activity in the area where he observed defendant. Without a single articulable fact supporting a reasonable suspicion that defendant was involved in criminal activity, Meador's intuition alone was not sufficient to justify the stop. Because Meador lacked reasonable suspicion that defendant was engaged in criminal activity, the stop was unlawful.

Because the stop was unlawful, the evidence recovered following defendant's consent to the search must have been suppressed if it was derived from the preceding illegality. *State v. Hall*, 339 Or 7, 25, 115 P3d 908 (2005). The state did not contend in the trial court, or in its answering brief in this court, that the seizure of the sack containing methamphetamine was not derived from the illegal seizure of defendant. However, in a memorandum of additional authorities, the state contended that the Supreme Court, in *State v. Hemenway*, 353 Or 129, 295 P3d 617 (2013), had "extensively modified the exploitation analysis" adopted in *Hall*; the state implied that, under *Hemenway*, the evidence would not be suppressed. The Supreme Court recently vacated its *Hemenway* decision. *State v. Hemenway*, 353 Or 498, 302 P3d 413 (2013). As a result, the *Hall* methodology applies. In the light of the state's failure to make any argument under *Hall*, we agree with defendant that the evidence derived directly from or was the product of the illegal seizure of defendant. Accordingly, that evidence must be suppressed.

Reversed and remanded.