Submitted December 20, 2013, affirmed April 2, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KELLY PETERS,
*Defendant-Appellant.*

Sherman County Circuit Court
100025CR; A151003

324 P3d 474

Peter Gartlan, Chief Defender, and Zachary Lovett Mazer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Justice J. Rillera, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and De Muniz, Senior Judge.

DEVORE, J.

## DEVORE, J.

Defendant appeals a judgment of conviction for unlawful possession of methamphetamine, ORS 475.894. She assigns error to the trial court's denial of her motion to suppress, arguing that she was subject to an unlawfully extended traffic stop. In reviewing a trial court's denial of a motion to suppress evidence, we are bound by the trial court's explicit and implicit findings, if there is sufficient evidence in the record. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993). We review as a matter of law the trial court's application of legal principles to those facts. *Id.* We affirm.

We summarize the facts consistently with those standards. An officer stopped defendant for speeding. At some point during the stop, either at the outset or later, the officer asked defendant if she knew the whereabouts of "Natalie Green," a wanted person known to defendant but irrelevant to the traffic stop. Defendant replied that she did not know Green's whereabouts. When the officer asked defendant for her driver's license, defendant reached into her purse and pulled out a small metal tin, resembling a business card holder. She opened the tin to remove her license. The officer saw a small plastic baggie with brown residue that was sitting on top of her license in the tin. From his experience, the officer believed that that the residue was methamphetamine. Defendant brushed the baggie onto the floorboard. The officer asked defendant for the baggie, but she claimed that she could not find it. He asked defendant to get out of her car, and he retrieved the baggie from the floorboard. Residue in the baggie tested positive for methamphetamine.[1] Defendant was charged with unlawful possession of methamphetamine.

Defendant moved to suppress the evidence against her. At the suppression hearing, defendant argued that the officer discovered the evidence as a result of an unlawfully extended traffic stop, in violation of Article I, section 9, of the Oregon Constitution. Defendant testified that the officer asked immediately about Green when he reached her car window. She argued that the questioning about Green

---

[1] During a subsequent search of defendant's car, the officer found an additional pouch containing a small plastic baggie with methamphetamine residue.

extended the traffic stop beyond the time necessary to complete it. *See State v. Gomes*, 236 Or App 364, 371, 236 P3d 841 (2010) (describing an unlawful extension of a stop). In his testimony, the officer recalled asking defendant about Green. He was unsure about the relative timing of his question, but he thought that he had asked for the license first. The trial court chose not to resolve the factual dispute.[2] The trial court found that the relative sequence of questions did not matter because the officer's request for the license would have produced the evidence anyway. The trial court denied defendant's motion, and defendant entered a conditional guilty plea pursuant to ORS 135.335(3).

On appeal, defendant reiterates her challenge based on the purportedly unlawful extension of the stop. We reject that challenge because, even if we were to assume that the officer asked defendant about Green before requesting her license—and, thus, effected an unlawful extension of the stop—the discovery of the methamphetamine was not sufficiently causally related to that alleged illegality to require suppression.[3] Assuming *arguendo* defendant's recollection of the facts, the admissibility of evidence, arguably resulting from an unlawfully extended stop, turns on a sequence of questions upon which the burden of proof shifts between defendant and the state. *See State v. Hall*, 339 Or 7, 25, 115 P3d 908 (2005) (describing sequential questions and respective burdens).[4]

---

[2] Because the trial court expressly chose not to decide the dispute, on appeal we cannot presume from the absence of a finding that the court implicitly found that the license request was posed first. *See Ehly*, 317 Or at 75 ("If findings of historical fact are not made on all pertinent issues and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion.").

[3] If the request for the license happened first, then the stop would not have been extended when the defendant inadvertently revealed the baggie with her license. Having made a valid stop and inquiry, the officer would have been at a place where he was entitled to be when the evidence came into plain view. *See State v. Sargent*, 323 Or 455, 463, 918 P2d 819 (1996); *State v. Crook*, 93 Or App 509, 512, 762 P2d 1062 (1988) (evidence in plain view is admissible and is not a product of illegal search).

[4] The *Hall* methodology applies in this case, *State v. Huffman*, 258 Or App 195, 198, 308 P3d 288 (2013), notwithstanding the subsequent decision in *State v. Hemenway*, 353 Or 129, 295 P3d 617 (2013), which would have modified the analysis that follows here. The subsequent decision was vacated as moot after the death of the defendant in *State v. Hemenway*, 353 Or 498, 302 P3d 413 (2013).

The analysis begins with the principle that an officer may not extend the duration of a traffic stop by interposing a series of unrelated questions or actions constituting another investigation, without reasonable suspicion of another offense. *State v. Rodgers/Kirkeby*, 347 Or 610, 626-28, 227 P3d 695 (2010). During a lawful stop, officers may nonetheless make an inquiry into unrelated matters during an "unavoidable lull" in the investigation. *State v. Dennis*, 250 Or App 732, 737, 282 P3d 955 (2012) (citing *Gomes*, 236 Or App at 371). An unavoidable lull occurs in a period of time in which the officer cannot proceed with the investigation, such as, while awaiting record check results or while awaiting the driver's identification. *State v. Nims*, 248 Or App 708, 713, 274 P3d 235, *rev den*, 352 Or 378 (2012). If an officer has initiated an unrelated inquiry, then it is the state's burden to prove that an officer did so during an unavoidable lull. *Dennis*, 250 Or App at 737; *State v. Berry*, 232 Or App 612, 616-17, 222 P3d 758 (2009), *rev dismissed*, 348 Or 71 (2010). Even if the state fails to prove permissible timing, however, suppression does not necessarily follow. *See Hall*, 339 Or at 25. A new question arises and, as to it, the burden shifts. Defendant must prove the existence of a minimal factual nexus—"that is, at minimum, the existence of a 'but for' relationship—between the evidence sought to be suppressed and prior unlawful police conduct." *Id*. If the defendant succeeds, then a final question arises and, as to it, the burden shifts yet again. The *Hall* court explained that:

> "the state nevertheless may establish that the disputed evidence is admissible under Article I, section 9, by proving that the evidence did not derive from the preceding illegality. To make that showing, the state must prove that either (1) the police inevitably would have obtained the disputed evidence through lawful procedures even without the violation of the defendant's rights under Article I, section 9; (2) the police obtained the disputed evidence independently of the violation of the defendant's rights under Article I, section 9; or (3) the preceding violation of the defendant's rights under Article I, section 9, has such a tenuous factual link to the disputed evidence that that unlawful police conduct cannot be viewed properly as the source of that evidence."

*Id*. at 25 (internal citations omitted).

For purposes of analysis here, we have posited defendant's version of the facts and an unlawfully extended stop. In many cases, the question—whether there is a minimal connection between the constitutional violation and the discovery of incriminating evidence—is readily apparent. A defendant's consent to search, for example, may be prompted by and occur "during an unlawful seizure." *State v. Ayles*, 348 Or 622, 633-34, 237 P3d 805 (2010). Even so, the nexus question is not always apparent or resolved *sub silentio*. The Supreme Court has observed that "the 'minimal factual nexus' standard is a true standard, not a resort to the logical fallacy, *'post hoc ergo propter hoc.'*" *Id.* at 634. It is not enough merely to show one thing happened after another. *Id.*

The nexus requirement is illustrated in *State v. Courtney*, 242 Or App 321, 338, 255 P3d 577, *rev den*, 351 Or 401 (2011). In that case, the defendant was a passenger in a car during a traffic stop for a missing tail light. The driver's license was discovered to be revoked. The officer removed the occupants from the car, one by one, in preparation for impounding the car. We recognized that particular circumstances, detailed in the opinion but omitted here, comprised an unlawful seizure as to the defendant passenger. Next, when the officer opened the defendant's passenger door, the officer heard a clinking sound, and two methamphetamine pipes fell into view. We concluded that the evidence was admissible. We explained that:

> "The only factual connection that we discern in this case between defendant's unlawful seizure and the discovery of the methamphetamine pipes is that the latter occurred after the former began and while the former was ongoing. It was [Officer] Stenzel's own action in opening the car door, not any action of defendant's that precipitated the discovery of the pipes. That police conduct, however, neither effectuated defendant's unlawful seizure, nor was investigatory in nature. Instead defendant was removed from the car so that it could be towed. That removal was unrelated to defendant's seizure. * * *

> "* * * [W]e conclude that defendant has failed to meet his burden to demonstrate the existence of a minimal factual nexus between the discovery of the methamphetamine

pipes and the unlawful police conduct; it was not error for the trial court to deny defendant's motion to suppress as to the pipes."

*Id.* Although we described *Courtney* as a rare case in which a defendant fails to show a minimal factual nexus, this case demonstrates that *Courtney* is not unique.

We conclude here, too, that defendant did not show a minimal factual nexus. The officer's question had no causal relationship to the discovery of the methamphetamine. *Cf. State v. Knapp*, 253 Or App 151, 159, 290 P3d 816 (2012) (where causal relationship was shown). As in *Courtney,* the incriminating evidence fell into view for reasons unrelated to any arguable extension of the stop. Because defendant was stopped for a traffic citation, she reached into her purse, removed the tin from her purse to extract her license, opened the tin, and revealed the baggie sitting on top of the license. Her disclosure of the tin's contents resulted from the traffic violation, not from the inquiry about Green. Even if there were an unlawful extension of the stop, it did not produce the incriminating evidence. The evidence was admissible. The trial court did not err in denying defendant's motion to suppress.

Affirmed.